This case is about what Congress decided in the Public Utilities Regulatory Policy Act, otherwise known as PERPA. That statute, which is designed to protect certain alternative sources of energy, known as qualifying facilities, has two provisions that are relevant to this appeal. First, it vests exclusive jurisdiction in the federal district courts to hear claims that a state has failed to faithfully implement the requirements of PERPA. And second, it specifically designates the role that the Federal Energy Regulatory Commission, otherwise known as FERC, will have in those proceedings. It can either, upon request, bring litigation itself, or it can have an intervention as a matter of right in any litigation brought by a qualifying facility. JUSTICE KENNEDY In terms of exclusive jurisdiction, you can file a claim with FERC, can't you, rather than come to the Court? MR. KNEEDLER You cannot, Your Honor, no. In order to bring a violation of PERPA, there's only two places you can go, and this Court's cases have addressed it. There's either as-applied challenges, which means you go to state court, or there's implementation challenges, which means that you go to federal district court. This is an implementation challenge in federal district court. In this case, Louisiana has adopted new rules that we allege systematically strip qualifying facilities of their rights under PERPA. We asked FERC to bring the lawsuit. It said that it would not, but recognized in doing that, that Occidental could proceed with its litigation. We filed the litigation, and then the district court then stayed the litigation under the doctrine of primary jurisdiction, waiting for FERC to express its views in a separate proceeding. JUSTICE KENNEDY I want to ask you about that separate proceeding called an integration action. Can we call it that? MR. KNEEDLER We could, Your Honor, yes. JUSTICE KENNEDY Why is it called integration action? MR. KNEEDLER Well, Your Honor, there's a plan that has to integrate into the MISO, which is the system operator for the region. JUSTICE KENNEDY Right. So we're going to just refer to it as the integration action? What's the status of that integration action now? MR. KNEEDLER It's on ice, Your Honor, in the sense that we filed that action in January 2013. In March 2014, FERC asked for some supplemental filing, and since then nothing has happened. JUSTICE KENNEDY Well, have the parties, and again I'm asking what's on the record, has Occidental Chemical said to FERC periodically what's happening here? Why aren't you moving on this? MR. KNEEDLER Well, Your Honor, I understand that we briefed everything before FERC. These proceedings traditionally take a long time, so it's not like we've gone in there and asked for emergency relief for FERC to decide it, but JUSTICE KENNEDY Why haven't you? I thought you asked for fast-track processing. MR. KNEEDLER We did, Your Honor, but JUSTICE KENNEDY Did FERC tell you to go to federal court the last time you filed something? MR. KNEEDLER Well, Your Honor, there's two different things that are going on, and it's important, and we emphasize that they're separate. But this is correct, that when we asked FERC to implement, because there's a litigation against Louisiana or the LSPC, the Louisiana Public Service Commission, when we asked FERC to bring litigation against them, FERC decided not to, and recognized expressly in its order that that meant that we would be able to go forward. JUSTICE KENNEDY We need to be very careful about keeping these separate for this recording. MR. KNEEDLER I agree, Your Honor. JUSTICE KENNEDY So what I'm asking about is what's going on in the integration action, not the current action in federal court, the PURPA action. But in the integration action, you asked for fast-track processing. You tell me the briefing was completed, what, over a year ago? MR. KNEEDLER Yes, Your Honor. JUSTICE KENNEDY And yet, you haven't inquired of FERC or asked FERC to move on your proceeding? MR. KNEEDLER Your Honor, we've — my understanding is that we have asked FERC to move on the proceeding expeditiously. It's fully briefed. But, no, we have not come in and filed additional pleadings asking them to move forward. JUSTICE KENNEDY Filed a motion. You haven't? MR. KNEEDLER No, Your Honor. JUSTICE KENNEDY Now, let's say FERC started today. What's next? Is there going to be a hearing in the integration action? Is there going to be evidence presented? Is there going to be live testimony? What's going to take place? MR. KNEEDLER Your Honor, typically, the FERC would issue an order that would explain its views on the submissions before it and make a finding as to whether or not there's been a violation of the Federal Power Act. JUSTICE KENNEDY This is all done on papers? MR. KNEEDLER This is typically done on papers, yes, Your Honor. JUSTICE KENNEDY No hearing? MR. KNEEDLER Your Honor, to be honest with you, I don't know, but I don't believe there is, no, Your Honor. JUSTICE KENNEDY So if all that's required is for FERC to issue a ruling on briefs that were filed over a year ago, what's your best estimate as to how long it should take FERC to do that if it started today? MR. KNEEDLER Your Honor, I don't know. And the reason is because in these types of proceedings, as you see from our briefing, FERC will often take many, many years. There's no way that we can force FERC to take action. Often it's – we're talking about five, ten, ten years for them to take action. And the reason – one of the reasons why I think FERC may not take action is because Congress has separated out these two proceedings, and FERC realizes that there is a district court action that's proceeding. And our point about keeping the two separate, Your Honor, is that between the two of them, the one that takes precedence is the PERPA action in the district court, because the district court has to decide that issue. And so one of our big complaints with what the district court in this case did is that it has shifted the burden of inertia in a way that prompts FERC to take more time and not express its views, as opposed to if you follow Congress's commands and allow the litigation to go forward, it will provide an incentive for FERC to either intervene in the action as it's entitled to do and at once to decide the issues in the separate integration complaint. Well, wouldn't – if FERC was going to intervene, wouldn't they have already intervened? Your Honor, that is our point, that if FERC wanted to express its views, it's had opportunities to do that. Certainly it hasn't foreclosed its ability to come back to the district court and ask to be able to participate. But the essence of this case is that the district court invoked the primary jurisdiction doctrine on the theory that it wanted the FERC's Congress has specifically explained how those views shall be provided to the court, which is either through FERC bringing its own action or through intervening. And the problem, as we explained in our brief, is that by staying the action indefinitely, the court has essentially violated this court's precedence in the Mercury Motor decision. But what about – what if the court didn't stay it indefinitely but issued an order saying unless – I'm going to stay this case temporarily and give FERC an opportunity in the next six months to decide the first action? And if they don't do that, then you have the right to come back and we'll trial the case. So, Your Honor, let me answer that in two ways just because I don't want to confuse your question, which I think has two parts to it. One is that we certainly agree that the district court has usual discretion to manage its docket. And so, to some extent, the district court can exercise that discretion. But, Your Honor, if I took your question for all that it's worth, we would still have the same problem, which is that the one thing that the district court can't do is invoke primary jurisdiction as the basis for that, as opposed to exercising just control over its docket. The idea of primary jurisdiction would be to suggest that FERC has a role to play here that's different from the role that Congress assigned. And so, even under your hypothetical, Your Honor, we would still have problems with it if the basis for that was that the district court said, well, I'm going to create a separate non-statutory way for FERC to express its views. Well, the court would have discretion to do that, would it not? It would have some discretion, Your Honor, to control its docket. Wasn't that what happened in the Wagner and Brown v. A&R? Well, Your Honor, I'm not sure exactly what happened in that case. I do know if you take a look at, say, like the Hines case or Linton case that we talked about, it makes exactly that distinction, which is as long as the district court is exercising its control over the docket, then that's appropriate. But if it's exercising a primary jurisdiction to state the proceedings, particularly if they're indefinitely, I mean, I do think there's a big difference between the hypothetical and our situation because there is no stopping point here. So, although I think we would win under the idea that if the district court invoked primary jurisdiction and said, well, maybe for two years, we would still have a case, I think it is particularly telling here that we've been out for an indefinite period and nobody knows when. I'm glad to hear you say that because I thought you were saying that if the district court invokes primary jurisdiction, it cannot impose some sort of deadline on the regulatory agency to take action. Your Honor, what I would say, just to be clear, is that under the Mercury Motor decision, we think the correct reading of the case law and actually the correct reading of the statute is if Congress has established a scheme by which a federal agency will coordinate with the district courts here, where it will express its views through intervention, then that scheme makes the primary jurisdiction doctrine, a judicially created doctrine, unavailable. And so the reason why I'm resisting the idea that any invocation of that doctrine would be okay is that I think Mercury Motor forecloses that. See, I read Mercury Motor in the statute they were involved with in that case precluding a stay, and PURPA doesn't do that. I mean, that's the way I read it. Your Honor, with respect, I think that is true. That's a factual distinction between the two, but I think if you read Mercury Motor, it's broader than that, and there's the key language in its opinion where it says, look, when you think about primary jurisdiction, the reason you do that is to get the views of the agency, and there's — but it doesn't apply when one exclusive jurisdiction has been given to the district court, if you think about that, because in those cases, the primary jurisdiction belongs to the court. If anything, it should be the other way around. The FERC should be deferring to the court, not vice versa. And second, the Court also makes the important point that when Congress has assigned it — now, here, admittedly, there isn't in the statute a specific reference to the stay, but it's very, very clear what FERC's role will be. Congress is very specific about it. It doesn't have to mention the word stay in order to make clear its intent that FERC will participate through intervention. But suppose the district court had discretion to stay when the value of getting the special expertise of the agency outweighed the harm, and isn't that essentially what the discretion the Court has? Your Honor, let me say no, but with a caveat. So the way that we look at the case, Your Honor, is that under Mercury Motor, the first question is, can you invoke primary jurisdiction at all and use that as the basis for staying a case? The answer to that is no. Our second point, though, Your Honor, is that if the — if we're wrong about that, and primary jurisdiction can be invoked in these circumstances where Congress has assigned the roles of the agency and the courts, then the district court has discretion and has to apply a weighing. And as you can see from our briefs, our point here is that even if that's true, the district court didn't engage in the required weighing. And one of the reasons for that is because as long as the evidence in the record is that we don't know when FERC will decide, and it's an open-ended stay, which everyone agrees that it is at this point, then the weighing has to be very questionable as to what benefit FERC will provide. And here, in particular, if you take a look, for example, at the D.C. Circuit's decision in Niagara-Mohawk, you realize that the expression of the views of FERC don't really count for much because the role that the district court has is not factual finding in the sense of making findings about how the market works. It's taking a look at whether the new rules that have been taken by Louisiana comply with the statutory requirements of PURPA and the regulatory requirements of the regulations that are on the book. As the D.C. Circuit recognizes, those are legal judgments that can be made with or without FERC's views. And FERC's views, of course, can be offered through the mechanism that Congress has provided. I take your point about the district court giving an indefinite stay, but that gets me back to my point about the Brown case, where if . . . I don't see . . . I mean, the district court clearly said it would be very helpful to me to have FERC's views on that first action. And so, if . . . tell me what would be wrong with sending the case back and tell the district court, we understand you need or want the help of the agency, but you can't just stay this case indefinitely. You've got to put a time limit on it, say 180 days or some similar time, and to give them an opportunity to rule. And if they don't, then the case comes back to the district court. So, Your Honor, I'd say two things about that. One is that I . . . with respect, I still think that is creating a judicial process that is not contemplated by what Congress did in its statute. So, I think you have a mercury motor problem. But second, Your Honor, is that even if that had been appropriate in the first instance, we have now been waiting three years since the integration complaint was filed, almost two years since the . . . we started the process of filing the litigation here. I'm not sure at this point, with FERC has known all the time, and Judge Dennis, you pointed out, in FERC's order, when it said we're not going to file the litigation ourselves, we recognize that Occidental has the right to do so. FERC knows that this litigation is pending, so to, at this point, give them additional time, we think, would be inappropriate. I'd like to save the rest of my time for rebuttal . . . But what about a 60-day period? Your Honor, that's exactly right. The statute is very clear that in order to move things forward, FERC had 60 days to decide whether to file the litigation or not. One of the points we make in our brief is that that shows that Congress wanted to keep FERC on a tight clock because of all federal agencies, FERC is known for not being an agency that sticks on a tight clock. That's why 60 days to decide. All right. Thank you, sir. Thank you very much. All right. Ms. Quinn? May it please the Court, I'm Jennifer Quinn Barabinoff, and I'm here on behalf of the Appellant Entry to Louisiana, and I'm joined today by Mr. Noel Darcy, who is here on behalf of the Louisiana Public Service Commission. Occidental's appeal must fail for two reasons. First, this Court lacks jurisdiction to review the District Court's primary jurisdiction stay, which is not a final order. And second, in the unlikely event that this Court does reach the merits, it should conclude that the District Court did not abuse its discretion in determining that a FERC decision in a pending proceeding initiated by Occidental, which FERC has concluded raises largely the same issues as this proceeding, would materially aid the Court before it embarked in resolving this dispute, which has the potential to disrupt an electric power market that serves 42 million people in 15 states. Now, the crux of the dispute between the parties relates to whether or not the MISO-QF integration plan complies with PURPA. And— Are you going to argue a jurisdiction point? Yes, Your Honor. All right. Go ahead and argue that, would you? Yes. Now, ordinarily, of course, a stay is not a final appealable order. So Occidental bears the burden of establishing that some exception applies in this case, and it has effectively out-of-court exception and the collateral order doctrine, neither of which provides a basis of review. My question is, why doesn't Hines establish that exception? I mean, you know, I know you say that Cone overruled Hines, but in an opinion after Cone, U.S. v. Garner, we said Hines remained good law, and that binds us. Your Honor, the Court did address Hines in Garner and tried to reconcile it with Cone in a footnote. That's dicta, and that is not binding on this Court. And, in fact, Your Honor, in another decision in which you participated, the Dresser case, this Court indicated that the precedential value of Hines at this point, in light of Cone, is questionable. And this Court has repeatedly confirmed that Cone only applies where there is a stay in favor of State court proceedings. And as in Kershaw, this Court held that the Cone consideration is simply not in play where a Federal court enters a stay in favor of a Federal court of agency proceeding where there will be some Federal court review at a future point. I know Cone involved a stay of a State court order, but I don't read Cone to say that that's all it applies to. Well, that's what this Court has said, that it's not in play where a Federal court enters a stay in favor of a Federal agency proceeding. That was precisely the issue presented in Kershaw, Your Honor. And, again, in the same footnote where the Supreme Court mentions Hines in Cone, it simultaneously says that the Cone considerations of effectively taking a plaintiff out of his chosen Federal forum don't apply, only apply where the stay is not in favor of a Federal agency proceeding. Well, but putting aside what may or may not be precedent, why shouldn't it? If, in effect, a district judge sends a case or stays a case for some slow-moving Federal agency, presented as being the slowest we have, and they have to wait 10 years on a decision, why isn't that effectively putting them out of court? Because that's not this Court's precedent, Your Honor. I'm not. I told you. Put precedent aside. Just talk reality. Well, Your Honor, perhaps the Court could evaluate the merits of an open-ended stay in terms of whether or not the Court appropriately exercises discretion, but that's something that would come later, for example, on a petition for mandamus, if the proceeding had been outstanding too long. Occidental remains free to move to have the stay lifted if, at some point in the future, the FERC proceeding appears to have been stalled. But on the record before the Court, at the time it entered the stay, it was appropriate and reasonable for the Court to conclude that it would be aided by a FERC decision in the underlying case. And so the effectively out-of-court exception, as applied by this Court after Cohen, has really been limited to some boilerplate language applied in an administratively terminated prisoner rights litigation, which is much of the case law that Occidental relies upon. Neither does the collateral order exception apply here. That is only available where substantial public interests are at stake with respect to the type of order at issue. The case presented by Occidental, the stay here, doesn't implicate any of the kinds of concerns that this Court has recognized, constitutional concerns and the like, that provide a basis for collateral order review. And in addition, there are three requirements Occidental has to satisfy to invoke that exception. First, the stay order would have to conclusively determine a dispute of issue. Second, that issue would need to be completely separate from the merits of the underlying dispute. And third, it would have to be effectively unreviewable on appeal from final judgment. In order to satisfy for collateral order review, Occidental would need to satisfy all three of those requirements, and in fact, it satisfies none. Most notably, here there is a very substantial overlap between the issues before FERC that provided the basis for the stay and the issues pending before the District Court. FERC found that there was an identity of issues and there was an adequate record for that before the District Court. In fact, the disputed questions that overlap go very much to the heart of the matter here. These are not ancillary questions that can be addressed on collateral order review. They are the heart of the matter. And for that reason, several other circuits we discuss in our brief have found that primary jurisdiction referrals to agencies are not appropriate for collateral order review. Occidental relies on the Litton case, which is distinguishable on several grounds. In that case, the federal court reviewed a stay in favor of hundreds of state and municipal proceedings, which involves a defense of state action to an antitrust claim. The Litton case was expressly limited to the issue presented. It has not been cited in the 30 years since it was issued, and it provides no guidance here where the stay has been entered in favor of federal court proceedings. With respect to the merits of the underlying primary jurisdiction stay, the first argument that Occidental makes is that the District Court could not enter a primary jurisdiction stay consistent with PURPA, and that's incorrect. That argument rests almost entirely on this Court's decision in Mercury Motor, which, as Judge Davis, you recognize, involved a very different statutory scheme from the PURPA regime at issue here. Mercury Motor involved the Interstate Commerce Act, which granted the agency the ability to stay the federal court proceeding. It did not mention authority for the federal District Court to enter a primary jurisdiction stay, and for that reason, this Court concluded that the District Court did not have that authority. The Court also noted that the unique scheme there only authorized the District Court to enjoin clear and patent violations, and so for that reason, the concern of uniformity, which is usually a key factor in deciding when a primary jurisdiction referral is appropriate, was not at issue to the extent in the Mercury Motor case that it is here. So for those two reasons, that statutory regime is really quite different. Although it is true that PURPA authorizes FERC to initiate an enforcement proceeding, that is not the same to say that those enforcement proceedings are against the State Commission. That is not the same as to say that that is the only vehicle for FERC to express a view about PURPA. And, in fact, Occidental clearly believed that FERC had the ability to rule on PURPA questions in the context of its integration complaint. Otherwise, it would never have invoked FERC's jurisdiction to do so. And, in addition, FERC clearly thought that it would have another opportunity to pass on these issues because in the same letter in which it declined to initiate an enforcement action and found that the proceedings raised substantially the same issues, it said that they should be addressed at the same time, meaning in the context of the pending MISO integration complaint. So given the very technical, there was no legal bar to the District Court entering the primary jurisdiction stay, and given the technical complexity of the issues here, where FERC is the agency that has promulgated the interpreting regulations, a factor that weighed in favor of the primary jurisdiction in Wagner and Brown, it clearly has technical expertise that could assist the District Court in this very complex matter. And, very importantly, here the risk of conflicting rulings by FERC and the District Court was substantial and very real. And as this Court recognized in Mississippi Power and Light, the case for primary jurisdiction is most compelling where there is a pending agency proceeding, and that is the case here, and that is also what creates this risk of inconsistent rulings. Mr. Darcy will elaborate further, but if the District Court were, for example, to invalidate the avoided cost order, which is premised on the MISO market structure, which is created by a FERC-approved tariff that is within FERC's exclusive jurisdiction, the LPSC would be left in an untenable position. So he'll elaborate on the practical consequences of that further. But here, the risk of conflict was substantial and very real. And so the— But if FERC was interested in deciding it, why didn't they decide it? Well, Your Honor— I mean, I know you don't know, but I mean, isn't that a pretty good indication that they'll just—they're not in any hurry to do it, and it may be 10 years before they do it? Well, we don't know how long they'll take, Your Honor, but one fact is definitely clear, which is that MISO is in front of FERC in the FERC proceeding. MISO is not a party to the District Court proceeding below. And so Occidental has requested an injunction that precludes the LPSC and Entergy from following any aspect of the MISO integration plan that violates PERPA. But the District Court can't order MISO to change its rules. FERC can achieve that through the process that is going on. Only FERC is in a position to create a uniform remedy to this dispute. The District Court is not. Well, but, I mean, FERC apparently operates on its own schedule, and the plaintiff in this case is without a remedy until FERC rules. I mean, you don't—we can't leave them in that position. Well, Your Honor, to be clear, actually, in this case, as opposed to Wagner and Brown, which you mentioned earlier, there is no record of any harm to Occidental that is attributable to the delay. They've claimed an ongoing violation, but this is not a situation where in Wagner and Brown, apparently, Wagner and Brown would have incurred some very substantial financial hardship if the ruling were delayed substantially. And that was a driver behind this Court's decision to put a limitation on the extent of the stay. There is absolutely no record of harm here whatsoever. You would object to putting a time limit on the stay? Your Honor, our preference would be for the District Court to look at that question again in the first interest. Again, that might actually even benefit Occidental in some respects if it wanted to present the District Court with a more fulsome record as to what actually are the disadvantages it claims it's experiencing as a result of the delay in resolving this issue. What if we remanded this to District Court for the parties to present positions to it on how long FERC should be allowed to have to make this ruling and then order the District Court to decide, based on that presentation, to amend its order invoking primary jurisdiction but with a time limit on it? Your Honor, I believe those issues were already addressed in the briefing below, and — Well, I don't care whether they were or not. What's wrong with us sending it back and telling the Court, we want a time limit put on this stay. Now, let the parties present their positions and then fix a time limit. Well, Your Honor, it's not clear why that would be a necessary remedy as opposed to allowing some period of time that seemed reasonable to go by and then Occidental could move if there was an action. Well, if the Court doesn't tell FERC to do something, FERC will do nothing. Well, Your Honor, it's not even clear based on this record that FERC is aware of the ongoing proceeding. Excuse me? I'm not even entirely clear that FERC is — FERC has issued a letter saying that it was not going to initiate an enforcement action, but it's not as if this — materials from the District Court action have been provided to FERC, to my knowledge. FERC surely — FERC knows of the integration action that it's got. Yes, it does. It's doing nothing. Yes, Your Honor. We all wish that the proceeding were moving forward. So why don't you support a time limit on FERC so we can move this down the road? Your Honor, if the Court wants to do that, obviously that's something that the Court could do to remand for further findings as to the appropriate length of the stay. However, based on the record that Occidental had an opportunity to develop, you know, these was provided, the District Court reached what it found to be a reasonable conclusion based on the record before it. Okay. Thank you very much. Thank you, Your Honor. D'Arcy? Thank you. Noel D'Arcy on behalf of the Louisiana Commission and its commissioners in their official capacities who were also sued in this matter. You know, my — I'm trying not to overlap with what she has already said, but my argument is going to focus mostly on what the LPSC did and didn't do and why this is a huge problem for the LPSC to assign them the blame for whatever it is that Occidental feels that MISO should have done or the FERC should have done with regards to MISO's market design and put them in a position where their order might be invalidated based on something that they don't control and did not control. And I'd like to, I guess, begin to sort of answer the question that you just asked Mr. Rabinoff, you know, why wouldn't it be appropriate to send it back with a time limit? And the one reason I can think of is because it still wouldn't solve the problem that the LPSC is going to have if the FERC, you know, rules in a different way than the court rules. What Occidental has done here is combine in its — what the Louisiana Commission did was issue an order changing the avoided cost pricing that its utilities in MISO are allowed to pay to QF for QF puts. That pricing prior to the time in MISO was based on what the energy companies would have produced themselves with their own generators or would have went out and tried to buy from someone else and didn't because of the QF put. They were allowed to join MISO, which is a regional market in 2012. That MISO decision by the commission to allow that to happen was based on evidence and testimony that there would be benefits from doing so that would adhere to the retail rate payers of the utilities that the commission represents. MISO has, you know, energy markets that span over 15 states and have generators that can provide power to everybody who's in MISO. MISO controls the transmission system, but they have energy markets. Now that energy is in MISO, when it — if it doesn't — if it takes a QF put, that QF put is taking the place of the next increment of power it's going to buy. And under PURPA, that next increment of power is the avoided cost, and that would be purchased in the MISO market. The LPSC order did that. Because they were in MISO, the LPSC order ruled that the avoided cost price that you have to pay has to reflect the price that the MISO market would be, the next LNP price. And that's just a simple fact. They're not going to be going out and generating themselves independently. They're going to be buying it from the MISO market. What Occidental did was claim that the LPSC order, which only changed the avoided cost price, is invalid because the utilities are now in MISO and have to follow MISO's market rules. The MISO market rules were set up long before the energy utilities joined MISO. MISO's been around for years. The FERC's established how MISO operates its systems. The FERC established and approves MISO tariffs on how utilities and QFs can participate in MISO. Mr. Darcy, most of this is going right over my head. Okay. Well, if the Louisiana Public Service Commission issues an order that violates PURPA, then it—you know, either the court or the FERC under the statute has got to correct that. So, I mean, that's—to me, that's what it boils down to. I don't—it may be a hardship. It may be—I don't know what it'll be, but if it's a violation, it has to be—it has to be rectified. Okay. Well, I'm—what Occidental is claiming is that the order that established the avoided cost did other things, too. And what it's claiming is that the order denies Occidental the right to choose between PURPA puts and participating in the MISO market. The LPSC order didn't do that. That's something that takes place at the FERC level and the FERC tariffs. Well, I guess that's something to be decided, isn't it, in the case? Well, that's what they—that's what they say. Now, what'll be decided in the case, if the judge decides it, the judge can't decide to change the MISO markets. He can't decide to change how MISO operates its markets. The judge can only decide that if we issue an order and it violates PURPA, that that violates PURPA. Well, the reason why it's so important to let the FERC—to allow the statute to stay in place and to allow the FERC to continue to make its decision in the MISO integration order, what if the judge decides that we violated, you know, PURPA by issuing an order that was based on our MISO market rules, MISO market rules that we can't fix, MISO market rules that we didn't change, yet the FERC doesn't change the MISO market rules. The MISO market rules stay in place. They're valid. Now, we have QFs that are putting to us and our utilities that are participating in MISO. We can't allow those utilities to pay the avoided costs in the MISO market just because this judge ruled that the MISO market rules were invalid, but the MISO market rules stay the same? Well, I mean, I don't disagree with you that it'd be preferable if FERC would go ahead and rule, but we can't let a litigant sit there for 10 years without a ruling from an attorney. Well, I mean, the Occidental claimed in their brief that the FERC is slow to act. I mean, I'm the last person to tell you that the FERC is not slow to act. You know, we've been before this Court before complaining that the FERC is slow to act on something, but the FERC doesn't take 10 years to act on everything. The FERC acts on some things quickly. The FERC acts on some things very, very slowly. You know, anecdotal analysis of looking at the FERC website to see if cases are on there are old doesn't mean that the FERC is never going to act, and there shouldn't be a rule by this Court that denies us, you know, the ability to get their judgment when it's important just because it's the FERC. What do you mean, get it when it's important? Well, I mean, it's important to the LPSC because the reason I was trying to explain, if the judge rules that the LPSC order is invalid because the FERC, the MISO rules are invalid, but the FERC doesn't change the MISO rules, it leaves us in a place where we can't fix it. That's why you ought to want FERC to move quickly. We do want FERC to move quickly. And all I'm suggesting is, you know, there's no reason to believe the FERC will not move quickly enough. Is there any way the district court or we can give some incentive to FERC to move faster? You know, I mean, in order to us, you know, or the judge would issue it to the district court, setting a time limit on it, I guess, would help. It would help if Occidental, you know, pestered the FERC. We've done that before, too. If you file motions asking the FERC to act quicker, you can do that. It's all electronic. You don't even have to see anybody. You can do it every week if you want. Sooner or later, you'll know it. All right. Thank you, Mr. Baker. Thank you, Mr. Parrish. You have the last word. I want you to comment on counsel's argument that Occidental is not suffering any harm here. Your Honor, that's just wrong. I think it's important to distinguish between injury and damages. There's no doubt that we've suffered injury. Every day since this order was in place, we've been unable to exercise our rights under FERPA. What is what? To do what? Well, there's rights in terms of how we sell energy and then the rates that it gets applied at. So each time we sell energy, there's a question of whether it's at the appropriate rate or not. There's specific curtailment rights that we have. One of the – the way we would look at the case is that the actual issue of liability here is not that difficult. It's a question, as Niagara Mohawk says, about interpreting the statutes and the regulations. What is more challenging here is, in part because of the delay, is the damages issue because you have to take a look at all of these sales that have occurred ever since the LPSC implemented this new scheme, and you have to take a look at the – and whether it's above the rate that was prescribed or below it. Well, I'm sure you've taken a look at all that. Have you suffered any injury from that? Well, Your Honor, we have taken a look at it, but what happened in the district court as we explained in our briefs is that part of us, in order to figure out exactly what the quantum of damage is, we need discovery. We started to get that discovery because the magistrate thought that the case should go forward, but then when the district court – when we started getting the discovery, the district court stayed things. One of the reasons I mentioned that is in terms of the remedy, we would really urge the court that the right remedy here is to send it back to the district court, enforce the statute that Congress said, but recognize that the parties still are in the early stages of the case. There would be nothing wrong with the district court saying to FERC, you have a right to intervene. We will – you know, this – FERC pays attention to this Court's decisions, if not the district court's decisions. Before the parties are even to the point of concluding the initial stages of the case, FERC would have more than, you know, 90, 180 days to decide to get into the case. If I could, Your Honors, I did want to make three points in response on rebuttal. First, very quickly, jurisdictional. Second, overlapping. And three, just to clear up a few things for the record. Let me just say, I take from your answer, you don't know whether you suffered any harm. We know we suffered injury. I can't tell you what the quantum of damage is, Your Honor. Okay. I didn't hear a formula that you had given me as to how much injury you suffered. I don't know how much. All I know is that every day we've been selling energy in, and depending on how the prices vary, and other things will depend on how you calculate the damages, but certainly we have purple rights that have been stripped from us ever since this new scheme was in place. Quickly, to the three points on jurisdiction, I think the answer there is that opposing counsel cannot point to anything in Moses Cone that unequivocally overrules, that can't point to anything in this Court's decisions that unequivocally overrule the Lytton case, and that, combined with the rule of orderliness, means that Hines is controlling here and Lytton is also controlling. Of course, the way we look at these decisions is to say that there's something special about the fact that when Congress has dictated how the scheme should work, we really are, as a practical matter, Judge Barksdale, out of court. We really are, as a practical matter, a collateral order because it prevents us from having a right to get this litigated now, just as we're talking about delay makes this case harder, not easier. Your Honor, my opposing counsel talked about overlap. It is, we will not deny that there is overlap in terms of some of the factual predicates that set the stage for the two cases, but they're very different. They're different claims. They are between different entities with different parties, and there are different standards that could apply under the relevant statutes. There's lots of circumstances where you get to go to different adjudicators to resolve different claims, but that doesn't mean that you have to wait for the other one. And, in fact, as I mentioned, Judge Dennis, if there's any question of primary jurisdiction here, the primary jurisdiction belongs in the district court. That's what Congress said. Well, I would quickly look back at the very brief order staying this action. I didn't see any mention, again, I'll read it very quickly again. I didn't see any mention of concerns about overlapping proceedings by the district judge. He just said he'd be helped by FERC's expertise. Your Honor, I should have said that as well because you're absolutely correct. All the district court says is, I'd like the views. Well, that's fine. Congress has set forth a process. The district court can say, FERC, come before us. Likewise, Your Honor, I think this goes to opposing counsel's concerns about all this problems about what might happen. Judge Davis, your question is exactly right. I mean, if it violates PURPA, that's the issue before the court, not whether it creates problems. But the real answer is that why should we trust either of the parties? There is a federal agency that could tell you if there's going to be a problem here. That would be FERC. That should be presented to the district court in the first instance. I mentioned I wanted to clean up the record if I could just address a few things. Opposing counsel talks about on, she refers to FERC's order saying that they should be decided at the same time. She's referring to paragraph 3 on the record excerpts exhibit F, but I'd urge you to read on. As Judge Ginsburg recently said, the first rule of interpretation, always keep reading on. Paragraph 4 is where FERC recognizes that this litigation is allowed to go forward. Second, Your Honor, is that in the case of Hines, you know, it emphasized the problems of waiting for Godot. That's really what we've got here is we have no idea as to when FERC will decide. There is a process to change the incentives to force FERC to decide if it wants to, which is to let the litigation go forward and allow the FERC to come in. It's been— I'm sorry, Your Honor.  We appreciate it. Thank you for your argument. We have your case.